**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JAN BRANSON, Individually as heir-at-law and as Special Administrator of the Estate, and JAMES OLIVA & BRADFORD OLIVA, Individually as heirs-at-law of Matthew C. Oliva, deceased,

Plaintiffs,

v. Case 2:25-cv-02025-KHV-ADM

BOARD OF COUNTY COMMISSIONERS, SHAWNEE COUNTY, KANSAS d/b/a SHAWNEE COUNTY ADULT DETENTION CENTER; ARMOR HEALTH HOLDINGS, LLC; ARMOR HEALTH MANAGEMENT, LLC; ARMOR HEALTH OF SHAWNEE COUNTY, LLC; MARIANA MACK, M.D.; HEATHER WILLIER; MAGGIE MOORE; EMILY FOSTER; HEIDI WHITE, R.N.; KIMBERLY CLAFLIN, R.N.; DAWN SILER, R.N.; CASSANDRA GUMBEL; CAMI COCKE; SAMANTHA RITCHIE, R.N., and SERGEANT SHANNON ADDINGTON

Defendants.

---

**Answer of Shawnee County Defendants**

The Board of County Commissioners of the County of Shawnee, Kansas, Heather Willier and Shannon Addington (collectively the Shawnee County Defendants) answer the complaint as follows:

1. All allegations not specifically admitted herein are denied.

2. In response to the unnumbered introduction paragraph, the Shawnee County Defendants deny negligence and deny violating the rights of Matthew C. Oliva (Oliva).

3. Paragraph 1 is admitted.

4. Paragraph 3 are admitted except it is denied that Cindi Beck is the County Clerk (Lisa J. Schmitt succeeded Ms. Beck effective January 13, 2025).

5. In response to ¶¶ 4 and 5, it is admitted that Oliva was detained at the Shawnee County Adult Detention Center (SCADC) from October 22, 2023 to November 5, 2023. The Shawnee County Defendants do not know the period encompassed by "all times material hereto"

and, for that reason, deny those allegations in ¶¶ 4 and 5.

6. Paragraphs 6, 7, and 8 are admitted.

7. These answering defendants lack the knowledge to admit or deny ¶¶ 9, 12, 13, 17-18, 25-29, 30-31, 34-49, 51-71 and, for that reason, deny the same.

8. Paragraphs 10, 14-16, 19, 21, 23, 24, 33, 50, and 72 are admitted.

9. In response to ¶ 11, it is admitted that, from October 22, 2023 to November 5, 2023, Defendant Armor was obliged to provide Oliva with reasonably necessary healthcare, including medical, dental and mental health services and that Defendant Armor and its employees were acting under color of law.

10. In response to ¶¶ 72-73, 75-78, it is admitted that Dr. Mack is a medical doctor and psychiatrist employed by Defendant Armor and that Dr. Mack personally evaluated Oliva and was acting under color of state law.

11. In response to ¶ 74, it is admitted that Dr. Mack was, for a time an independent contractor for Defendant Armor.

12. Paragraph 79 is admitted.

13. Paragraphs 80-82 are denied.

14. In response to ¶¶ 83-86, it is admitted that Margeret Moore is the Health Services Administrator for Defendant Armor, held that position during Matthew Oliva's detention from October 22 to November 5, 2023, that Moore evaluated Oliva and was acting under color of state law.

15. In response to ¶¶ 87-90, it is admitted that Emily Foster is the Behavioral Health Director for Defendant Armor, held that position during Matthew Oliva's detention from October 22 to November 5, 2023, that Foster personally evaluated Oliva and was acting under color of state law.

16. In response to ¶¶ 91-92, it is admitted that Heidi White was a Registered Nurse for Defendant Armor, held that position during Matthew Oliva's detention from October 22 to November 5, 2023, that Nurse White personally evaluated Oliva and was acting under color of state law.

17. In response to ¶¶ 93-95, it is admitted that Kimberly Claflin was a Registered Nurse for Defendant Armor, held that position during Matthew Oliva's detention from October 22 to November 5, 2023, that Nurse Claflin personally evaluated Oliva and was acting under color of state law.

18. In response to ¶¶ 96-98, it is admitted that Dawn Siler was a Registered Nurse for Defendant Armor, held that position during Matthew Oliva's detention from October 22 to November 5, 2023, that Nurse Siler personally evaluated Oliva and was acting under color of state law.

19. In response to ¶¶ 99-100, it is admitted that Cassandra Gumbel was a Psych Tech for Defendant Armor, held that position during Matthew Oliva's detention from October 22 to November 5, 2023, that PT Gumbell personally evaluated Oliva and was acting under color of state law.

20. In response to ¶¶ 101-103, it is admitted that Cami Cocke was a Behavioral Health Professional (BHP) for Defendant Armor, held that position during Matthew Oliva's detention from October 22 to November 5, 2023, that BHP Cocke personally evaluated Oliva and was acting under color of state law.

21. In response to ¶¶ 104-105, it is admitted that Samanth Ritchie was a Registered Nurse for Defendant Armor, held that position during Matthew Oliva's detention from October 22 to November 5, 2023, that Nurse Ritchie personally evaluated Oliva and was acting under color of state law.

22. Paragraph 106 is admitted.

23. Paragraphs 107-109 are denied.

24. In responses to ¶¶ 110 and 137, subject matter jurisdiction and venue are appropriate.

25. These answering defendants lack the knowledge to admit or deny ¶¶ 111-118, 127-136 and, for that reason, deny the same.

26. Paragraphs 119-126 are admitted.

27. In response to ¶ 138, the Shawnee County Defendants incorporate the remainder of their answer.

28. In response to ¶ 139, it is admitted that Oliva was born October 14, 1998 and died November 17, 2023.

29. In response to ¶ 140 it is admitted that Matthey C. Oliva had an apparent mental health condition, had a violent demeanor, and was unfit for detention in general population.

30. The Shawnee County Defendants lack the knowledge necessary to admit or deny the allegations in ¶¶ 141-143 and, for that reason, deny them.

31. In response to ¶ 144, it is admitted that Oliva was arrested on October 22, 2023 by the Topeka Police Department and was taken to the SCADC.

32. The Shawnee County Defendants lack the knowledge necessary to admit or deny the allegations in ¶¶ 145 and 146 and, for that reason, deny them.

33. In response to ¶ 147, it was admitted that Oliva was booked into the SCADC on October 22, 2023 at approximately 3:50 a.m.. The remaining allegations in ¶ 147 are denied.

34. In response to ¶¶ 148-50, Armor Police J-E-02, is a written document and is the and is the best evidence of its content.

35. In response to ¶ 151, it is admitted that TPD Officer J. Byers checked the box next

to "'Hyper" or 'manic'" on the SCDOC Outside Source Information of Possible Suicide Risk form.

36. In response to ¶ 152, it is admitted that Nurse Claflin conducted the pre-booking screening of Oliva and described Oliva's behavior as "bizarre" and believed Oliva was either chemically impaired or had a mental illness. The Shawnee County Defendants lack the information necessary to admit or deny the remaining allegations in ¶ 152 and, for that reason, deny them.

37. In response to ¶ 153, it is admitted that at detention officer in booking documented receipt of an alert at approximately 4:50 a.m. stating that Oliva suffers from mental health issues and spent time in a mental health facility in the past and had previously been placed on suicide watch or close observation status.

38. In response to ¶ 154, the classification inmate interview form is a document which speaks for itself. It is admitted the form listed, among other things, that "mental health" was a current medical condition for Oliva, and that "psychological impairment" and "mental deficiency" presented special management issues. It is also admitted that Oliva was classified as a maximum custody level inmate. The remaining allegations in ¶ 154 are denied.

39. In response to ¶ 155 is admitted, that Defendant Addington document observing Oliva at approximately 6:59 a.m. yelling, beating on his door and being disruptive. It is denied that Oliva had smeared his own feces over the walls of his cell and mattress in booking and it is denied that Addington observed such conduct by Oliva or such conditions in his cell. It is admitted that Addington spoke with Nurse White and asked if there was any reason why Oliva could not go to special housing.

40. In response to ¶ 157, these answering defendants lack the information to admit or deny the allegations therein and, for that reason, deny them.

41. In response to ¶ 158, it is admitted that nurse white approved Olive for placement in special housing.

42. Paragraphs 159 is denied.

43. In response to ¶¶ 160, it is admitted that defendants Claflin, Siler, and White violated Armor Policy J-E-02-11, but not for the reason stated therein.

44. In further response to ¶ 69, It is admitted that Nurse White did not complete a medical intake screening and did not conduct nursing rounds every two hours until the screening was completed.

45. In response to ¶ 70, it is admitted that Nurses Claflin, Siler and White did not have Oliva sent to the Emergency Department for evaluation.

46. Paragraph 161 is denied with respect to Defendant Addington. It is admitted that Nurses Claflin, Siler and White did not complete a medical screening for Oliva.

47. In response to ¶¶ 162 and 163, it is admitted a medical screening for Oliva was not completed by Defendant Armor's staff.

48. In response to ¶ 164, Policy J-E-02.11 and J-G-02-2 are written documents which speak for themselves. It is admitted, however, that the Shawnee County Defendants reasonably expected that Defendant Armor's employees would complete medical screening and conduct daily segregation rounds as required by those policies.

49. In response to ¶ 165, it is admitted that, unbeknownst to the Shawnee County Defendants, Defendant Armor's employees never completed Oliva's initial medical screening from October 22 to November 5, 2023.

50. Paragraph 166 is denied.

51. In response to ¶¶ 167 and 174, SCADC Policies IS-E-02.III and IS-E-02.IV are written policies that speak for themselves.

52. In response to ¶¶ 168 and 169, it is admitted that BHP Cami Cocke completed the Behavioral Health Intake Screening (BH-014) on October 22, 2023. The form is a written

document that speaks for itself.

53. Paragraph 170 is denied as stated as it appears Ms. Cocke merely recorded the answers given by Oliva and not that she was documenting her own observations and/or knowledge on the questions indicated.

54. In response to ¶¶ 171 and 173, it is admitted that Cocke noted Oliva was manic and placed Oliva on close observation (CO) status due to concerns for his present mental status and future goal of going to prison but Cocke did not enter the CO status or "urgent referral" in the Electronic Medical Record on until November 6, 2023—after Oliva had left the SCADC.

55. In response to ¶ 172, it is admitted that Cocke did not direct that Oliva be sent to an Emergency Department for evaluation.

56. Paragraph 175 is denied.

57. In response to ¶¶ 176 and 179, these answering defendants lack the information necessary to admit or deny the allegations therein and, for that reason, deny them.

58. In response to ¶ 177, it is admitted that a refusal of treatment form reflecting a time and date of 2200 hours on October 23, 2023 reflects a refusal of treatment with notes stating "appears manic, speaking @ a rapid rate 'I'll do a collusion screening.'"

59. In response to ¶ 178, the documentation reflects that Defendant Foster attempted to see Oliva on October 24, not October 23.

60. In response to ¶ 180, it is admitted that BHP Cocke visited Oliva on October 24, 2023 to complete and her Behavioral Health Progress note noted Oliva was disheveled and "forcefully expressed he needed his medications" while saying he "may need to kill others to make the symptoms stop if his meds aren't bridged" and said he wanted to harm the officers at the jail.

61. Paragraph 181 is denied as to the Shawnee County defendants.

62. In response to ¶ 182, these answering defendants lack the information necessary to

admit or deny the allegations therein and, for that reason, deny them.

63. In response to ¶¶ 183-191, it is admitted that Oliva sustained a laceration requiring sutures, that Oliva was transported to the Emergency Department, that Oliva's laceration was sutured, and that Oliva was returned to the SCADC. The remaining allegations in these paragraphs are denied.

64. In response to ¶¶ 112- 119, 121, 123-124, 127, 129-134, 137-142, 144-149, 151-158, 160, 174-172, 173-176, 181-182, 190, 252 these answering defendants lack the information necessary to admit or deny the allegations therein and, for that reason, deny them.

65. In response to ¶ 200, it is admitted the PT Gumbel documented a call with Oliva's Mother, Jan Branson.

66. Paragraphs 202, 215-216, and 223 are admitted.

67. Paragraphs 205 and 206 are denied.

68. In response to ¶ 208, it is admitted the PA Hammond completed a Hospital Discharge Follow-Up Form for Oliva on October 27, 2023.

69. Paragraph 230, it is admitted that on November 1, 2023, Dr. Mack and PT Gumble briefly went to the door of Oliva's cell but did not enter.

70. Paragraph 239 is denied as to the Shawnee County Defendants.

71. In response to ¶¶ 241-242, it is admitted that Dr. Mack, PT Gumble, and Health Serv. Admin. Moore visited Oliva's cell at 1124 without entering the cell and that Dr. Mack and PT Gumble returned to the cell at 1230 but did not enter.

72. In response to ¶ 243, it is admitted Dr. Mack made a note in Oliva's EMR dated November 3, 2023 on the Initial Evaluation (BH-011) form. Dr. Mack noted Oliva's appearance (agitated, aggressive, smeared with feces) and ordered 3 new medications for Oliva to start on November 3, 2023.

73. Paragraph 251, is admitted.

74.

75. In response to ¶¶ 257 and 267, it is admitted that Oliva was found unresponsive in his cell on November 5, 2023 and was taken to Stormont Vail where he was diagnosed with sepsis, esophageal rupture, acute kidney injury, cellulitis of his left leg, and elevated troponin.

76. Paragraphs 258 and 260 are admitted.

77. In response to ¶ 259 it is admitted that corrections specialists attempted to get Oliva to respond to his meal and to take a shower and, when these attempts failed and they contacted Sgt. Ross at which point medical staff was summoned.

78. In response to ¶ 263, it is admitted that an ambulance was called to take Oliva to the hospital.

79. In response to ¶ 264, the screenshot shows Oliva's leg on November 5, 2023 while on an ambulance gurney.

80. Paragraph 256 is denied.

81. In response to ¶¶ 268 and 269 it is admitted that Oliva was transferred from Stormont Vail Hospital to the University of Kansas Medical Center and that Oliva died there on November 17, 2023.

82. Paragraph 271 is denied as to the Shawnee County Defendants.

83. Paragraph 272 is denied.

84. In response to ¶ 273, these answering Defendants incorporate the remainder of their answer

85. Paragraphs 274-277, 281-289 inclusive of all subparagraphs, are denied.

86. In response to ¶¶ 278-280, these answering Defendants lack the information necessary to admit or deny the allegations therein and, for that reason, deny them.

87. In response to ¶¶ 290, 336, 348, 372, and 388, these answering Defendants incorporate the remainder of their answer.

88. Paragraphs 291-295, 297-298, 301-310, 314-315, 318-319, 323, 327-328, 330-335, and 388-397 are denied

89. These answering defendants lack the information necessary to admit or deny the allegations in ¶¶ 299-300, 312-313, 316-317, 320-322, 324-326, 329, 337-347, 349-371, 373-387 these answering Defendants lack the information necessary to admit or deny the allegations therein and, for that reason, deny them.

90. Defendants Willier and Addington are entitled to qualified immunity.

91. Plaintiffs' claims are barred or limited by the scope of the notice submitted pursuant to K.S.A. 12-105b.

92. Plaintiffs' claims for damages against these answering defendants are barred by the provisions of the Kansas Tort Claims Act, K.S.A. 75-6101, *et seq*.

93. Plaintiffs' claims are barred or reduced by the fault of others for whom these answering defendants are not responsible. K.S.A. 60-258a.

94. Plaintiffs' claims for damages are limited by applicable damage caps, including K.S.A. 75-6105, K.S.A. 60-1903, K.S.A. 60-19a02, and any other applicable damage cap statute(s).

95. The injuries claimed by plaintiffs herein were not caused by any custom, practice or policy of the Shawnee County Defendants.

96. Plaintiffs are not entitled to assert a claim for punitive damages against the Shawnee County Defendants.

97. The Shawnee County Defendants reserve the right to assert any and all additional affirmative defenses that may be revealed through the course of discovery.

98. **Jury Demand.** Defendants demand a jury trial.

99. **Designation of place of trial.** Defendants designate Topeka, Kansas, as the place of trial herein.

WHEREFORE, defendants respectfully request that plaintiffs take nothing and that defendants be awarded their costs and fees incurred in defending this action.

**Fisher, Patterson, Sayler & Smith, LLP**
3550 SW 5th Street | Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cbranson@fpsslaw.com
ksittenauer@fpsslaw.com

**s/David R. Cooper**
David R. Cooper #16690
Charles E. Branson #17376
Katherine E. Sittenauer #29903
**Attorneys for Defendants Board of County Commissioners of Shawnee County, Heather Willier, and Shannon Addington**

## Certificate of Service

On August 25, 2025, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record:

Thomas J. Preuss, MO #54923
Shawn G. Foster, MO #47663
PREUSS | FOSTER
11141 Overbrook Road, Suite 104
Leawood, KS 66211
Ph. 816-336-9706
tjpreuss@pflaw.com | sfoster@pflaw.com
**Attorneys for Plaintiffs**

Norman R. Kelly, #10639
NORTON, WASSERMAN, JONES & KELLY, LLC
213 S. Santa Fe – P. O. Box 2388
Salina, Kansas 67402-2388
Tel: (785) 827-3646 | Fax: (785) 827-0538
nrk@nwjklaw.com
Attorneys for Armor Defendants and Armor Health Management, LLC

Francesco Zincone, Pro Hac Vice
ARMAS BERTRAN ZINCONE
4960 SW 72nd Avenue, Suite 206
Miami, Florida 33155-5549
Tel: (305) 204-5740
fzincone@armaslaw.com
Attorneys for Defendants Armor Health Holdings, LLC; Armor Health of Shawnee County, LLC; Mariana Mack, M.D.; Maggie Moore; Emily Foster; Heidi White, R.N.; Kimberly Claflin, R.N.; Dawn Siler, R.N.; Cassandra Gumbel; Cami Cocke; Samantha Ritchie, R.N.; Armor Correctional Healthcare Holdings, Inc.; Jose Armas; and Otto Campo, M.D.; Enhanced Management Services, LLC

**s/David R. Cooper**